UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

FRANCES DAVIS                                                   CASE NO. 18-10559
    DEBTOR                                                      CHAPTER 7

TOWER CREDIT, INC.
    PLAINTIFF

V.                                                                      ADV. NO. 18-1039

FRANCES DAVIS
    DEFENDANT

**MEMORANDUM OPINION**

Tower Credit sued debtor Frances Davis to except from discharge the debt Ms. Davis owes under 11 U.S.C. §523(a)(2)(B), which precludes discharge of a debt for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by use of a statement in writing about the debtor's financial condition that is materially false. Ms. Davis responded that she did not lie on her credit application and, in the alternative, argued that Tower did not reasonably rely on the information in her credit application before making the loan.

This opinion explains the court's ruling for the debtor.

**Facts and Procedural History**

More than eleven years before filing bankruptcy and when she was eighteen years old, the debtor borrowed $4,143.15 from Tower Credit,[1] repayable in twenty-six monthly installments of $211.48.[2] The debtor's 2008 loan application showed net monthly income of

---

[1] Tower exhibits nos. 1, 2 and 3.

[2] *Id.*

$800. Among her expenses were monthly rent of $425, an obligation she claimed she split with a roommate.[3] The loan application also disclosed the debtor's monthly payment of $210 to Tower on a prior car loan, as well as $85 she paid MoneyTree every month on an unsecured loan.

Tower's application also included a "debt ratio" analysis, which compared an applicant's itemized average monthly expenses to his average monthly income. Tower considered that analysis in deciding whether the applicant could "afford" the loan. Ms. Davis's loan application reflected the following debt ratio information:

| **Budget** | House Pymt. | 213 | Est. Utility(Mo.) | 100 |
|---|---|---|---|---|
| | Car(s) Pymt. | 210 | Grocery/$100/Dep./Mo. | 100 |
| | Revolving Debit | 0 | Misc. 10%/Income | 80 |
| | Other Mo. Pymts. | 85 | Sub Total | 280 |
| | Subtotal | 508 | Grand Total | 788 |
| | % To Income | [blank] | Remaining Income | 12 |

Notably, there were no other expenses taken into account on the form's debt ratio calculation. Specific allowances for health insurance premiums, medical expenses and expenses for routine or emergency vehicle maintenance did not appear on the form.

Tower's credit application also called for references. The debtor's application listed Valtessia Berry as a coworker with a home address of 1646 N. 36 Street in Baton Rouge.

Frances Davis signed the application under language stating that the information provided to Tower was true,[4] and Tower made the loan. Stephen Binning, president of Tower Credit, testified that the debtor defaulted "almost immediately" after she borrowed the money. Tower eventually obtained a judgment against Davis that was not satisfied before her May 2018 bankruptcy filing.

---

[3] Tower exhibit no. 1.

[4] *Id*.

The debtor testified several times under oath at the chapter 7 meeting of creditors that contrary to her statements in the loan application, she did not have a roommate and so alone paid the full amount of rent when she borrowed from Tower.

**Analysis**

Exceptions to discharge are strictly construed against the creditor and liberally construed in favor of the debtor.[5] A party seeking to have the court declare a debt nondischargeable must prove by a preponderance of the evidence that the debt falls within an exception to dischargeability in section 523.[6]

Section 523(a)(2)(B) excepts from discharge debts for money or services obtained by "use of a statement in writing— (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with the intent to deceive." Statements falling within section 523(a)(2)(B) must do more than simply prompt speculation about the debtor's finances; rather, they must be "sufficient to determine financial responsibility."[7] In the case of an individual, for example, "statements of income and expenses or schedules of assets and liabilities" will qualify.[8] Davis's loan application plainly is a statement in writing respecting her financial condition. The issues are: (1) whether the information she gave Tower was materially false; and if so, (2) whether Davis intended to deceive Tower; and (3) whether Tower reasonably relied on the information Davis gave it in the application.

---

[5] *FNFS, Ltd. v. Harwood (Matter of Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011).

[6] *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

[7] *Old Kent Bank-Chicago v. Price (In re Price)*, 123 B.R. 42, 45 (Bankr.N.D.Ill.1991).

[8] *Id.*

### *The debtor's statement on her credit application*
### *that she had a roommate was materially false.*

A statement is materially false if the omission or misrepresentation "paints a substantially untruthful picture" of a debtor's financial condition and is of the type that would normally affect the decision to grant credit.[9] Tower complains that it would not have loaned money to Ms. Davis had it known she did not have a roommate who paid half the rent. Stephen Binning testified that the debtor's having to pay the full $425 monthly rent would have made her budget "negative"—meaning that her liabilities would have exceeded her assets and she would not have been able to afford the monthly loan payment. Because the application shows the debtor's monthly average income was $800, paying $425 of that just in rent—more than 50% of her monthly income—undoubtedly has a material impact on assets that would be available to pay Tower's loan, given her other obligations.

The debtor argues that the credit application was truthful and that her testimony at the meeting of creditors was inaccurate. She testified at trial that she was intimidated at the 341 meeting of creditors. She also claimed to have misremembered when she responded to Tower's questions by saying that she lived alone when she'd applied for the loan. Davis also claimed that she'd lived in approximately sixteen different places in the eleven years between obtaining the loan and testifying at the meeting of creditors, inviting the conclusion that Tower's questions confused her. She testified too that Valtessia Berry, the personal reference Davis listed on her credit application, in fact was her roommate when she applied for the loan, though Davis did not list her as living at the same address. The debtor claimed that she listed Ms. Berry as a coworker rather than as a roommate because she wanted Tower to know she had a job; and that she listed an address for Ms. Berry that was different from their apartment address because Ms. Berry

---

[9] *Fairfax State Savings Bank v. McCleary (In re McCleary)*, 284 B.R. 876, 885 (Bankr. N.D. Iowa 2002).

sometimes stayed at the other address with her mother and child, and had all her "legal paperwork" sent there.

The debtor's testimony at the 341 meeting of creditors is clear, confident, and unequivocal: she did not have a roommate when she borrowed the money from Tower. She testified under oath and before the import of the statements became apparent.[10]

Davis also called as a witness Ms. Berry, who testified that she was indeed the debtor's roommate when Ms. Davis obtained the loan from Tower.

Neither the debtor's nor Ms. Berry's testimony is credible on this point.

During her direct testimony, the debtor claimed that the application for Tower's loan in 2008 was "her first credit application." Tower's counsel on cross-examination forced the debtor to admit that her claim was not true by confronting her with evidence of her earlier loan from Tower.

Nor was Ms. Berry's testimony persuasive: she even misremembered her own mother's address.[11]

In summary, the defendant offered no credible testimony to support her claims.

### *The debtor made the false statement with the intent to deceive Tower.*

The next issue is whether Davis intended to deceive Tower. The Fifth Circuit has held that "intent to deceive may be inferred from use of a false financial statement."[12] A judge may

---

[10] Tower pointed to examples in her 341 testimony where the debtor responded that she did not remember. Tower exhibit no. 5, p. 24, lines 1-4 and p. 25, lines 7-14. Too, she did not respond with "I don't know" or "I don't remember" when asked whether she had a roommate in July 2008. Tower exhibit no. 5, pp. 32-33. That evidence casts doubt on the debtor's claim that she was intimidated into giving incorrect answers to Tower's representative at the creditors' meeting.

[11] Berry testified that her mother's address was 1416 N. 36 Street and not 1646 N. 36 Street, the address Davis listed on the credit application.

[12] *Young v. Nat'l Union Fire Ins. Co. (Matter of Young),* 995 F.2d 547, 549 (5th Cir.1993).

consider the totality of the circumstances and infer an intent to deceive when "[r]eckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation may combine" support that inference.[13]

The budget on the debtor's credit application plainly reflected that Davis would be unable to afford the loan she sought from Tower if she alone were obligated to pay the full $425 monthly apartment rent. Thus the debtor unquestionably had a motive to misrepresent her financial condition. That motive, coupled with the debtor's implausible trial testimony, supports a finding that the debtor recklessly disregarded the truth and intended to deceive Tower.

### *Tower did not reasonably rely on the credit application.*

The last element critical to the analysis in this case is whether Tower reasonably relied on the debtor's application as an accurate portrait of her financial condition. Tower did not carry its burden of proving this element.

The Fifth Circuit has held that:

> The reasonableness of a creditor's reliance, in our view, should be judged in light of the totality of the circumstances. The bankruptcy court may consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; **and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations**.[14]

Minimal investigation should have caused Tower to doubt the veracity of Davis's budget on the credit application. For example, the application budgets only "$100/Dep./Mo."[15] for food,

---

[13] *Morrison v. Western Builders of Amarillo, Inc. (Matter of Morrison)*, 555 F.3d 473, 482 (5th Cir. 2009), quoting *Norris v. First Nat'l Bank (In re Norris),* 70 F.3d 27, 31 n. 12 (5th Cir. 1995).

[14] *Coston v. Bank of Malvern (Matter of Coston)*, 991 F.2d 257, 261 (5th Cir. 1993) (emphasis added).

[15] Tower exhibit no. 1.

allowing the applicant a *total* of $3.33 per day for food for each person in the household, a patently unreasonable allowance.[16]

Nor did Tower's budget for the debtor have a place for car insurance payments, despite the fact that the loan at issue was to be secured by a 2001 Kia Optima.[17]  Tower's Binning testified at trial that Tower would deduct both health and car insurance premiums from an applicant's "Miscellaneous" budget entry on the debt ratio spreadsheet, at most ten percent of an applicant's income.  That figure of $80 per month for Ms. Davis was inadequate to cover the cost of insuring, operating and maintaining a motor vehicle, much less to satisfy co-payments for medical care and other unitemized living expenses.

These expenses apart, Tower concluded that a budget leaving the debtor only $12.00 over scheduled liabilities, without taking into account prospective monthly loan payments of $211.48 on the obligation for which she was applying, was reasonable and supported its decision to make the loan.  Tower's reliance on Davis's incomplete financial picture was not reasonable. *See Third Coast Bank v. Cohen (In re Cohen)*, 2013 WL 4079369 at *12 (Bankr. E.D. Tex. Aug. 13, 2013) (A plaintiff "may not blindly rely upon a misrepresentation, the falsity of which would be obvious to the plaintiff had he or she used her senses to make a cursory examination or investigation."); *Mullen v Jones (In re Jones)*, 445 B.R. 677, 721 (Bankr. N.D. Tex. 2011) ("Justifiable reliance does not require independent investigation of the facts as presented, but a plaintiff may not blindly rely upon a misrepresentation, the falsity of which would be obvious to

---

[16]  No evidence established that the debtor received any assistance for food or housing from any source —state, federal or from family members.  According to the U.S. Dept of Agriculture, in 2008 the income eligibility threshold for Supplemental Nutrition Assistance Program ("SNAP") benefits was a monthly gross income less than $851. https://www.fns.usda.gov/snap/cost-living-adjustment-cola-information accessed March 16, 2019.

[17]  Tower exhibit no. 3.  Louisiana law for decades has required drivers to carry automobile liability insurance.  La. R.S. 32:861.  Additionally, the debtor's pre-existing loan to Tower was secured by a 2001 Kia Optima, though no evidence at trial established that the car securing the earlier loan was the same as the collateral for the loan at issue.

the plaintiff had he used his sense to make a cursory examination."); *Kunzler v. Bundy (In re Bundy)*, 95 B.R. 1004, 1010 (Bankr. W.D. Mo. 1989) (recipient of a facially inadequate statement cannot completely ignore the deficiencies and expect later to successfully object to the discharge of the credit extended).

## Conclusion

Because Tower failed to carry its burden of proof to show its reliance on the debtor's loan application was reasonable, the debtor is entitled to judgment in her favor and against Tower, dismissing the complaint.

Baton Rouge, Louisiana, May 16, 2019.

s/ **Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE